## Leon Tyblewski, et al., v. Svea Fire & Life Assurance Company, et al.

### Gen. No. 11,904.

1. ARBITRATION AWARD—*presumption in favor of.* Courts look with favor upon arbitration as a method of settling disputes and every presumption in favor of the validity of an award will be entertained.

2. ARBITRATION AWARD—*what will not justify disturbance of.* A court of equity will not disturb the amount of an award merely because the evidence heard by the arbitrators would appear to justify the allowance of a different amount; some showing of fraud, accident or mistake is essential.

Bill to set aside award. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed July 11, 1905.

**Statement by the Court.** Appellants, as complainants in the Superior Court of Cook county, filed a bill to set aside an award on a fire loss on a stock of merchandise, and for· an apportionment of the loss among the twenty defendant companies who had issued to complainants policies of insurance on their stock of merchandise, and for an accounting.

The policies of insurance were all of the so-called "standard" form and contained the following provision:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and the company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss."

The twenty defendant companies prior to June 30, 1903, issued these policies of insurance to Tyble Bros. & Co., a

firm composed of two individuals, the complainants, who manufactured canvas and leather satchels and novelties, mostly of a cheap grade. The stock which complainants had on hand and covered by the policies was damaged by fire on June 30, 1903. After the fire complainants made a list of the property "damaged or destroyed" and a disagreement arose between the parties as to the loss and damage. On July 29, 1903, an appraisal agreement to determine the amount of such loss and damage as provided in the policies was entered into between complainants and the defendant companies. Complaints chose Julius Kiper, an active member of the firm of L. Kiper & Sons, who were manufacturing leather goods, as their appraiser. The companies named Louis Lapiner, who followed the business of adjusting fire losses for the assured. Prior to engaging in the adjusting business Lapiner had been in the general dry goods business for about twenty years and was familiar with the character and value of the goods described in the policies. Mr. Kiper and Mr. Lapiner agreed upon Mr. R. W. Owen of the firm of Lanz, Owen & Co., manufacturers of leather and canvas goods, satchels, etc., as umpire. Complainants and Kiper desired, for various reasons, that the appraisal be completed as soon as possible, and to avoid delays in submitting matters to Mr. Owen, the umpire, it was agreed at a conference of the appraisers and umpire that they should all make an examination of the amount of loss and damage at the same time; that each should take a list of the goods "damaged and destroyed" furnished by complainants and examine such goods and all evidence of loss, and by this method Mr. Owen might decide without delay in case of disagreement of the appraisers. Accordingly the umpire and appraisers went to complainants' place of business each day for eight or nine days and made the examination of the property listed, each man by himself, lot by lot, until they finished the list. Whenever a dispute arose between the appraisers as to the damage to any lot the umpire put down his own estimate on his schedule without their interposing in the matter. The complain-

34

ants were present most of the time, making suggestions and were fully heard. On August 8, 1903, the umpire and appraisers met for a final consideration as to the amount of loss upon the various items, and to make their award as to the aggregate loss. They made an award finding that the sound value of the stock of merchandise was $14,947.52, and that the loss and damage on the same was $4,978.48. Complainants filed their bill to set aside the award, and on hearing the Superior Court of Cook county dismissed complainants' bill for want of equity at complainants' costs, and complainants appeal from this decree.

Stephen A. Foster and E. C. Lindley, for appellants.

Joseph E. Paden, Oscar A. Kropf and George A. Follansbee, for appellees.

Mr. Justice Smith delivered the opinion of the court.

The numerous grounds of attack upon the award made by the bill may be classified as follows: *first,* that neither the appraisers nor the umpire made a full examination of the damaged goods or of the books of complainants, and did not give complainants proper opportunity to be heard touching the loss, and that they ignored and disallowed all loss for stock totally destroyed, and made their award on the damaged goods for an amount much less than the amount of loss they knew complainants had suffered; *second,* that Lapiner, the appraiser selected by the defendant companies, was not a competent and disinterested appraiser, but was prejudiced, dishonest and of bad standing and reputation, and that his character was well known to the defendant companies, but not to complainants, and that the companies selected Lapiner for the purpose of preventing a fair and impartial award; *third,* that Lapiner induced Kiper to join him in selecting as umpire Mr. Owen, who was one of complainants' principal competitors and not a proper person to act as umpire on the loss; *fourth,* that Lapiner prevailed upon Kiper to sign the award by assuring him that the companies would waive the award and agree to a

friendly action at law, if complainants were dissatisfied, and also by threatening Kiper that if he did not sign the award he, Lapiner, and Owen would sign an award for a much less sum of money; and *fifth,* that the umpire and appraisers agreed among themselves to charge exorbitant fees for their services.

In our opinion the evidence fails to sustain any of these charges. The evidence is voluminous and conflicting. To analyze it thoroughly would require an extended opinion, and we are not justified in taking the necessary time. The support of the bill, in the evidence, must be found to be in the testimony of Leon Tyblewski, quite largely. The various statements of this witness, however, are contradicted by so many witnesses and his conduct during the appraisement, and subsequent thereto, was of such character that little, if any, weight or credence can be given to his testimony. We think the evidence preponderates decidedly in favor of the defendants, and that no ground is shown either upon the merits of the award or in the conduct of the umpire and appraisers, or their character, to justify a court in disturbing the award. Courts look with favor upon arbitration as a method of settling disputes, and every presumption in favor of the validity of an award will be entertained. Merritt v. Merritt, 11 Ill., 565; McDonald v. Arnout, 14 Ill., 57; Root v. Renwick, 15 Ill., 461.

The umpire and appraisers were selected because of their special knowledge of the particular line of business in which complainants were engaged, including the values of the different kinds of stock carried in that business. They were expected to make their own estimates. As said in De Groat v. Fulton Fire Ins. Co., 4 Robertson's Reports (N. Y.) at page 510: "Such appraisers were at liberty to arrive at a conclusion in regard to the value of the articles they were called upon to estimate in such way as they thought proper; they were not bound to the strict judicial investigation of an arbitration." To the same effect is the case of L. & L. & G. Ins. Co. v. Goehring, 99 Penn., 13.

It is urged that the appraisers and umpire refused to

examine or consider the books of complainants and that these books constituted the best evidence of the amount of loss sustained by complainants. As to this contention the evidence of the parties is conflicting, with a preponderance, we think, against the averments of the bill. It appears that complainants with some reluctance did place their inventory book in the hands of Kiper, the appraiser selected by them, and that they submitted their day-book, journal and ledger also to Kiper, who went through them in a casual way, finding an entry therein which aroused his suspicion. Owen and Lapiner, however, were not given an opportunity to examine the books, as appears from their testimony. However this may be, if it be assumed that the appraisers rejected the books as evidence of the amount of loss, that action would not afford ground for serious criticism of the appraisers, for as said in Root v. Renwick, 15 Ill., 461: "We will not, therefore, presume fraud in the arbitrators, from the fact that they rejected evidence in relation to an issue before them, but will presume that other evidence had so far settled that inquiry as to render further proofs unnecessary."

It is held in Remelee v. Hall, 31 Vt., at page 586: "Arbitrators are not bound to follow even what they themselves deem the strict rules of law, unless it be a condition of the submission that they shall do so, and when the submission contains no such conditions, courts will never set aside an award or refuse to enforce it because the arbitrators have not followed strictly legal rules in hearing and deciding a case, unless it be shown that thereby manifest injustice has been done." And see Hall v. Norwalk Fire Ins. Co., 17 Atlantic Reporter, 359. The submission in this case contained no provision that the appraisers and umpire should follow strictly legal rules in their appraisement of the loss sustained by complainants, and it is evident, as we have suggested above, that the parties intended to rely upon the personal information, investigation and judgment of the appraisers and umpire.

Appellants claim that the court erred in excluding the

testimony of Leon Tyblewski and the books of appellants on the question of the loss sustained by appellants. These books were received in evidence by the court as being the books which the appraisers refused to examine according to complainants' testimony, but were not received for the purpose of showing the actual amount of goods on hand at the time of the fire, June 30, 1903. Conceding that this evidence would have tended to show that the appraiser had fixed a smaller amount for goods totally destroyed than was shown to be on hand by the books and the testimony of Tyblewski at the time of the fire, a court of equity would not set aside the award for that reason alone. To do so would be to substitute the judgment of the chancellor in place of the judgment of the appraisers and umpire, the judges chosen by the parties, and make the award the commencement, not the end, of litigation. The parties are bound by the judgment of the arbitrators unless it is a corrupt judgment, and a court of equity has no right to annul their award because it thinks it could have made a better. Burchell v. Marsh, 17 How., 344. Unless, therefore, the court could set aside the award on the grounds of fraud or misconduct of the arbitrators, the excluded evidence could not be availed of by complainants for the purpose for which it was offered. Our conclusion is that, under the circumstances of this case, appellants were not injured by the exclusion of the evidence for the purpose for which it was offered. That the inadequacy of an award may be, under certain circumstances, an important factor and entitled to consideration where it is palpable, and produces a conviction that the award was the result of corruption or bias, is not doubted. Many authorities so hold, but this is not such a case, and we cannot conceive how the receiving and consideration of the evidence offered in this case, on the question of the amount of loss, could have affected in any way the judgment of the court. On a hearing of an equity case "before an appellate tribunal, the question is not so much as to whether the lower court ruled properly upon this or that question as it is in cases at law, but whether,

upon the whole record, the decree is right." Flaherty v. McCormick et al., 123 Ill., 533.

While we do not intend to be understood as giving our approval of everything the appraisers did, we do not find that there was any such irregularity or misconduct in the proceedings of the appraisers, either jointly or severally, as would justify the court in setting aside the appraisement. There is no doubt that the umpire decided the points of difference between the appraisers, and his award having met the approval of the appraisers and having been signed by them, their judgment is conclusive. It is not necessary that it conform to what would have been the judgment of the court. It is sufficient that it was arrived at in pursuance of, and in substantial conformity to, the agreement voluntarily entered into by the parties. Agreeing as we do with the findings of the decree and the final disposition of the cause by the Superior Court, the decree is affirmed.

*Affirmed.*